The undersigned have reviewed the Award based upon the record of the proceedings before the deputy commissioner.
The appealing party has shown good grounds to reconsider the evidence. However, upon much detailed reconsideration of the evidence as a whole, the undersigned reach the same facts and conclusions as those reached by the deputy commissioner, with some minor technical modifications. The Full Commission, in the discretion, have determined that there are no good grounds in this case to receive further evidence or to rehear the parties or their representatives, as sufficient convincing evidence exists in the record to support their findings of fact, conclusions of law, and ultimate order.
***********
Accordingly the undersigned find as fact and conclude as matters of law the following, which were entered into by the parties at the initial hearing as
 STIPULATIONS
1. At the time of the accidents giving rise to this claim, the parties were bound by and subject to the Workers' Compensation Act.
2. At the time of the accidents giving rise to this claim, the employer-employee relationship existed between the plaintiff-employee and defendant-employer.
3. The carrier on the risk at the time of the February 26, 1992, accident was Continental Loss Adjusting Services, and the carrier on the risk at the time of the March 22, 1993, accident was CNA Insurance Companies.
4. The plaintiff suffered a compensable injury by accident on February 26, 1992.
5. The plaintiff suffered a compensable injury by accident on March 11, 1993. Pursuant to an approved I.C. Form 21 Agreement, plaintiff's average weekly wage at the time of the accident was $345.45. Plaintiff was paid temporary total disability benefits as a result of the accident for the following periods: 03/15/93 to 03/17/93; 03/22/93; 03/26/93; 04/15/93; 04/22/93 to 04/30/93; 08/06/93 to 09/01/93.
***********
Based upon the competent, credible, and convincing evidence adduced from the record, the undersigned make the following additional
 FINDINGS OF FACT
1. At the time of the initial hearing, plaintiff was 63 years old (DOB: 11/01/33), with a high school diploma and college training in police science. Plaintiff's work history prior to employment with the defendant-employer was varied and included the following: manufacturing and repairing pianos, supervising employees, a quality control position, a police officer for the City of Lenoir, owner of a security business, disc jockey, advertising sales person, and furniture factory employee. Plaintiff is able to read and write and, at the initial hearing, he exhibited no signs of difficulty with his eyesight, memory or emotional stability.
2. In August, 1990, plaintiff began working in the sanding department of the defendant-employer, where his job included lifting 25 to 60 pound tabletops. Prior to his employment with the defendant-employer, plaintiff had suffered bilateral inguinal hernias. On February 26, 1992, plaintiff suffered a recurrence of the bilateral inguinal hernias in the course and scope of his employment. The accident was accepted as compensable, and plaintiff was paid temporary total disability benefits for the period of February 27, 1992 through April 11, 1992.
3. Dr. James Cook surgically repaired plaintiff's recurrent hernias on March 3, 1992, and plaintiff returned to his regular job duties on April 14, 1992.
4. On March 11, 1993, plaintiff suffered another recurrence of his bilateral hernias while lifting tabletops in the course and scope of his employment. This accident was accepted as compensable; and plaintiff was paid for all of his time out of work, including the dates stipulated to by the parties.
5. Following the March 11, 1993 accident, plaintiff was treated by Dr. Michael Blackwell, who performed a surgical repair of the right hernia on April 22, 1993, after which plaintiff returned to suitable light duty provided by the defendant-employer. Plaintiff underwent a surgical repair of the left hernia on August 10, 1993; and, again, the employer provided suitable light duty for the plaintiff. Specifically, plaintiff was provided with a chair so that he could sit or stand based upon his preference. His job duties consisted of placing screws into small pieces of lightweight wood utilized in manufacturing tables. This position was not created for the employee and is one which is generally available in the marketplace.
6. While performing the light duty job, on November 22, 1993, plaintiff suffered a compensable injury by accident to his shoulder. Plaintiff's shoulder claim has been settled by a compromise settlement ("clincher") agreement. While the plaintiff was out of work for his shoulder claim, he underwent another surgical repair of the right sided hernia on February 23, 1994, which was performed by Dr. Blackwell. Although Dr. Blackwell took the plaintiff out of work for eight weeks following the surgery, plaintiff has already been compensated for this period of time out of work in connection with the shoulder injury.
7. Following the plaintiff's hernia surgery in February of 1994, and treatment for his shoulder injury, plaintiff was released to return to work on April 24, 1994. Dr. Blackwell released the plaintiff to return to full work duties with no restrictions. Plaintiff's testimony that Dr. Blackwell instructed him not to return to work and imposed restrictions upon him is not accepted as credible or convincing by the undersigned. Although plaintiff was released to return to full work duties, he misinformed his supervisor, Ben Church, to the effect of asserting that light duty work was required. Based upon plaintiff's claim that he was on restricted duty, the defendant-employer allowed the plaintiff to return to the light-duty screw-setting job.
8. As of April 24, 1994, plaintiff had regained his pre-injury wage-earning capacity. As of that date, plaintiff returned to work earning the same wages he had earned prior to the injury. Furthermore, plaintiff's only treating physician at that time, Dr. Blackwell, had released the plaintiff to return to unrestricted full work duties after the hernia repairs.
9. On September 21, 1994, plaintiff was terminated from the defendant-employer after he and a co-employee were found smoking in the restroom. Due to the chemicals and the dust in the furniture plant, the defendant-employer enforced a strict "no smoking" policy throughout the plant in order to protect employees from potential bodily injury or death from fires. Plaintiff was aware of the "no smoking" policy. Plaintiff's testimony that he was not smoking in the restroom is not accepted as credible or convincing. Pursuant to the written policy of the defendant-employer, both plaintiff and the co-employee who was caught with the plaintiff were terminated immediately. Plaintiff's workers' compensation claim and his injuries were not the basis for his termination. The undersigned find that plaintiff's misconduct, which was unrelated to his compensable injury, constituted a constructive refusal to perform the suitable employment provided by the employer and resulted in justified termination.
10. Following his termination from the defendant-employer, plaintiff did not engage in a suitable job search. Plaintiff's testimony regarding his efforts to find employment is vague and unconvincing. At the time of his termination, Dr. Blackwell had released the plaintiff to full work duties without restrictions as a result of his compensable hernias. Plaintiff's general family physician, Dr. Bowen, who treated the plaintiff for conditions unrelated to his hernias (including COPD, impotency and prostate problems) felt that given the plaintiff's entire condition, he could not return to heavy manual labor, but was able to work in some light duty capacity. Dr. Richard McBurney, who saw the plaintiff on one occasion in 1995, agreed that the plaintiff could work in a light duty capacity. There is, thus, no competent, credible or convincing medical evidence of record that the plaintiff has been unable to engage in any employment since his termination on September 21, 1994.
11. Regina Pence, a certified rehabilitation counselor, and rehabilitation case manager for CRR with a master's degree in rehabilitation counseling and over ten years of experience, reviewed the plaintiff's work history and medical history and viewed the plaintiff at the initial hearing. Ms. Pense conducted several vocational assessments in June and September of 1996 and located suitable positions within the plaintiff's restrictions, including two telemarketing jobs, an assembly job, two security guard positions and two gate guard positions. These positions paid in the range of $5.80 to $6.75 an hour. In Ms. Pence's opinion, there are suitable jobs available for the plaintiff within his restrictions in the vicinity of his residence. She felt that the plaintiff was capable of obtaining a job if he sought employment. The undersigned find Ms. Pence to be a credible and convincing witness.
12. Kim Smith, a rehabilitation case manager with Options and a certified rehabilitation case counselor, also conducted labor market surveys from June 1997 through September 1997 in the vicinity of plaintiff's residence. She located several available positions in the Lenoir area, including a shelter attendant position paying $14,550.00 per year, a position as a golf cart attendant, a clerical job, and a police telecommunicator and dispatcher position earning $18,000.00 per year. In Ms. Smith's opinion, suitable jobs are available for plaintiff in the vicinity of his residence within his job restrictions and obtainable. Ms. Smith's testimony is accepted as credible and convincing.
13. Rehabilitation Counselor Randy Adams, who was hired by the plaintiff, also testified. Mr. Adams met the plaintiff on one occasion on September 30, 1997, at which time the plaintiff complained of significant difficulties with his eyesight and memory, as well as exhibiting emotional upheaval. The undersigned find that plaintiff's behavior and complaints to Mr. Adams are inconsistent with his presentation and testimony at the initial hearing and are further inconsistent with the medical records and medical testimony. In light of these inconsistencies, and the plaintiff's demeanor at the initial hearing before the deputy commissioner, the undersigned defer and find that the plaintiff's testimony in general is not credible or convincing. The undersigned further find that Mr. Adams' conclusions, which are based upon the inaccurate history provided by the plaintiff, are not accepted as credible or convincing. Specifically, in addition to Mr. Adams relying upon the inaccurate presentation of complaints by the plaintiff, Mr. Adams gave an opinion that the plaintiff had been completely unable to work since September of 1994. In light of the medical evidence to the contrary, and in particular, given the fact that Mr. Adams had no personal knowledge of the plaintiff's condition prior to September 30, 1997, Mr. Adams' opinion is not given any weight. Mr. Adams' recommendation that the plaintiff is in need of psychiatric treatment is also not given any weight. Mr. Adams is not a medical-care provider, and the physicians who have seen the plaintiff have not made a recommendation that he is in need of psychiatric treatment.
14. The competent, credible, and convincing medical and vocational evidence of record indicates that the plaintiff has been capable of earning the same wages he earned at the time of his injuries since April 24, 1994. The undersigned find that the plaintiff has suffered no further loss of wage-earning capacity as a result of the compensable injuries by accident. The undersigned further finds that there is no credible or convincing evidence that the plaintiff has suffered a permanent partial impairment as a result of the injuries by accident.
***********
The foregoing findings of fact and conclusions of law engender the following additional
 CONCLUSIONS OF LAW
1. On February 26, 1992, plaintiff sustained an injury by accident arising out of and in the course of his employment. N.C. Gen. Stat. Section 97-2. As a result of the compensable accident, plaintiff suffered bilateral inguinal hernias. Plaintiff was entitled to temporary total disability benefits from February 27, 1992 through April 11, 1992. This compensation has been previously paid by defendants.
2. On March 11, 1993, plaintiff sustained an injury by accident arising out of and in the course of his employment. N.C. Gen. Stat. Section 97-2. As a result of the accident, plaintiff suffered bilateral inguinal hernias. Plaintiff's claim was accepted as compensable and defendant paid plaintiff all temporary total disability benefits to which he is owed.
3. Defendants' acceptance of plaintiff's workers' compensation claims creates a presumption of continuing disability and relieves the plaintiff from the initial burden of proving disability. Kisiah v. W. R. Kisiah Plumbing Co., Inc.,124 N.C. App. 72, 476 S.E.2d 434 (1996), rev denied,345 N.C. 343, 483 S.E.2d 169 (1997). The presumption of disability continues only until the employee returns to suitable work at wages equal to those he was receiving at the time of his injury.Watson v. Winston-Salem Transit Authority,92 N.C. App. 473, 374 S.E.2d 483 (1988); Tucker v. Lowdermilk,233 N.C. 185, 63 S.E.2d 109 (1951). Plaintiff returned to suitable work for defendant-employer on April 24, 1994 earning the same wages he earned prior to his injuries. As of April 24, 1994, plaintiff had also been released by his treating physician to return to full unrestricted work duties. The presumption of disability ended as of April 24, 1994. Plaintiff has not proven, by a greater weight of the competent, credible, or convincing evidence, that after April 24, 1994 he continued to be disabled or had any continuing diminished wage-earning capacity. N.C. Gen. Stat. Section 97-2(9), Section 97-29. Brown v. S NCommunications, Inc., 124 N.C. App. 320, 477 S.E.2d 197
(1996).
4. Plaintiff's termination on September 21, 1994 was due to misconduct and was unrelated to his compensable injury. His termination was for conduct for which a non-disabled employee would ordinarily have been terminated, and it constitutes a constructive refusal to perform the work provided and a forfeiture of benefits for lost earnings in this case. N.C. Gen. Stat. Section 97-32. Seagroves v. Austin Co., ofGreensboro, 123 N.C. App. 228, 472 S.E.2d 397 (1996). Plaintiff has failed to sufficiently or credibly prove that his subsequent inability to locate employment of any kind, or employment of any wage comparable to that earned prior to the injury, is due to his work-related disability.Seagroves, 123 N.C. App. 228, 472 S.E.2d 397; McCoyv. Oxford Janitorial Service Co., 122 N.C. App. 730,471 S.E.2d 662 (1996).
5. Plaintiff does not have any permanent partial impairment as a result of either the February 26, 1992 or March 11, 1993 injuries by accident. N.C. Gen. Stat. Section 97-31. Although a claimant may elect to recover permanent partial disability based upon a loss of wage-earning capacity as a result of either injury. Shaw v. United Parcel Service,116 N.C. App. 598, 449 S.E.2d 50, aff'd, 342 N.C. 189, 463 S.E.2d 78
(1994).
6. Plaintiff is entitled to have defendants pay any medical treatment arising from the February 26, 1992 or March 11, 1993 injuries to the extent that it tends to effect a cure, give relief or lessen his disability.
***********
Based upon the foregoing findings of fact and conclusions of law, the undersigned enter the following
 AWARD
1. Defendant shall continue to pay any future medical expenses that may be incurred by plaintiff as a result of the February 26, 1992 or March 11, 1993 injuries by accident, to the extent that such expenses and treatment are reasonably necessary to effect a cure, give relief or lessen the plaintiff's disability.
2. Plaintiff's claim for additional workers' compensation benefits arising from the February 26, 1992 or March 11, 1993 injuries by accident must be, and the same is, HEREBY DENIED.
3. Each side shall bear its own costs.
This case is ORDERED REMOVED from the Full Commission.
This the ___ day of May, 1999.
 S/_____________ J. HOWARD BUNN, JR. CHAIRMAN
CONCURRING:
S/_____________ THOMAS J. BOLCH COMMISSIONER
S/_____________ DIANNE C. SELLERS COMMISSIONER
JHB:kws