***********
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Holmes and the briefs and arguments of the parties. The appealing parties have not shown good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the Opinion and Award, except with regard to the denial of credit for the retirement benefits paid.
 ***********
The Full Commission finds as a fact and concludes as matters of law the following, which were entered into by parties as:
 STIPULATIONS
1. An employee-employer relationship existed between plaintiff and defendant on March 28, 2002.
2. The parties are subject to, and bound by the provisions of the North Carolina Workers' Compensation Act.
3. Defendant-employer is self-insured with Key Risk Management Services, Inc., as the administrator.
4. Plaintiff sustained a compensable occupational disease, bilateral carpal tunnel syndrome, which was diagnosed on March 28, 2002.
5. Plaintiff's average weekly wage was $494.90, yielding a compensation rate of $329.94.
6. Defendant accepted plaintiff's claim and paid benefits due to her under the North Carolina Workers' Compensation Act.
 ***********
Based upon all of the competent evidence of record the Full Commission makes the following:
 FINDINGS OF FACT
1. Plaintiff was a secretary at North Carolina AT University for over twenty-two years. In March 2002, plaintiff was employed as a secretary in the Department of Curriculum and Instruction, a department within the School of Education. Her supervisor was Dr. Dorothy LeFlore.
2. In Mid-March 2002, plaintiff visited her family physician and complained of pain in her hands and wrists.
3. Plaintiff underwent nerve conduction studies on March 28, 2002, which confirmed a diagnosis of bilateral carpal tunnel syndrome.
4. Plaintiff's claim for this occupational disease was accepted by her employer and benefits were paid to plaintiff.
5. Plaintiff elected to have carpal tunnel release surgery on the left hand, but not on the right hand due to a prior mastectomy on the right which removed the lymph nodes under her right armpit.
6. On July 23, 2002, a carpal tunnel release was performed on plaintiff's left hand decompressing the left median nerve.
7. On September 25, 2002, at the request of plaintiff, Dr. Kuzma released plaintiff to return to work.
8. Plaintiff's attempt to return to work failed, as plaintiff's regular work immediately caused an increase of numbness, tingling, and pain bilaterally in her wrists.
9. Based on the failed return to work, Dr. Kuzma referred plaintiff for a functional capacity exam to assess her permanent restrictions.
10. On October 22, 2002, the functional capacity exam demonstrated that plaintiff should avoid bilateral hand tasks, especially typing.
11. Defendant-employer did not have a job within the restrictions of the functional capacity exam.
12. On October 24, 2002, a Work Task Analysis was performed reviewing the possibility of plaintiff returning to a modified position as a processing assistant to a different department.
13. The work task analysis determined that plaintiff could perform the processing assistant job but only as modified, i.e. avoiding the word/data processing and typing responsibilities.
14. The primary duties and basic job functions of the processing assistant position were word/data processing and typing responsibilities.
15. Defendant witnesses, Dr. Deborah Calloway and Nanita Cole, both testified that the job of processing assistant was modified to fit plaintiff's restrictions and that the position, as modified, would not be offered as employment to the public at large or those already employed at the University.
16. The modified processing assistant job does not represent work that would be normally available to plaintiff with defendant-employer, nor with any other employer.
17. Plaintiff attempted to perform the processing assistant job as modified. Dr. Kuzma specifically instructed plaintiff to work only within the restrictions of the functional capacity evaluation.
18. Plaintiff's return to the processing assistant job failed because the job requirements were outside of plaintiff's permanent restrictions.
19. Defendant-employer directed plaintiff to meet with Nanita Cole, benefits manager for the employer to discuss other options.
20. Ms. Cole suggested that plaintiff apply for the Faulkenberry Disability Act, for which plaintiff applied, but her application was denied.
21. Ms. Cole suggested to plaintiff that her only other option was to accept early retirement.
22. Plaintiff accepted early retirement, as she believed she had no other options, considering that she was unable to perform the duties of the processing assistant position.
23. Plaintiff did not want to take early retirement. Plaintiff had planned to remain with defendant-employer until she reached the age of 65, when she could accept retirement with full benefits.
24. Defendant discontinued workers' compensation benefits when plaintiff returned to the processing assistant position.
25. At the time plaintiff retired, on or about November 12, 2002, and since that time, plaintiff has remained out of work without workers' compensation benefits. She remains temporarily totally disabled as a result of her occupational disease.
 ***********
Based on the foregoing findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. On March 28, 2002, plaintiff became disabled as the result of compensable occupational disease, to wit; bilateral carpal tunnel syndrome, while in the course and scope of her employment with defendant-employer. N.C. Gen. Stat. § 97-53(13).
2. Plaintiff's attempt to return to work in November 2002 in a modified processing assistant position with defendant-employer failed. The position as modified was not suitable because it was so heavily modified to accommodate plaintiff's limitations that such a position is not ordinarily available in the competitive job market. On November 12, 2002, plaintiff elected early retirement. Therefore, the position available to plaintiff at the time of her retirement was "make work" and, thus was not suitable employment. Peoples v. Cone Mills, 316 N.C. 426,342 S.E.2d 798 (1986). N.C. Gen. Stat. § 97-32.
3. Plaintiff by her retirement did justifiably constructively refuse unsuitable employment. McLean v. Eaton Corp., 125 N.C. App. 391,481 S.E.2d 289 (1987). N.C. Gen. Stat. § 97-32.
4. Defendant is not entitled to a credit for retirement benefits as these were benefits plaintiff had earned pursuant to the terms of her employment contract. Consequently, no credit would be allowed by statute. N.C. Gen. Stat. § 97-42. Estes v. N.C. State University, 102 N.C. App.52, 401 S.E.2d 394 (1991).
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Subject to an attorney fee provided below, defendant shall pay temporary total disability compensation at the rate of $329.94 per week for the period beginning November 12, 2002 and continuing until plaintiff returns to work or further order of the Industrial Commission. The amount that has accrued shall be paid to plaintiff in a lump sum. Defendant shall not receive credit against the workers' compensation benefits due for any retirement compensation paid to plaintiff.
2. Defendant shall pay all medical expenses incurred or to be incurred as a result of her compensable occupational disease for so long as said treatment effects a cure, gives relief, or lessens plaintiff's period of disability.
3. An attorney fee of 25% of the compensation awarded to plaintiff in Paragraph 1 of this Opinion and Award is approved for plaintiff's attorney. Defendant shall deduct 25% from the lump sum to be paid to plaintiff and pay directly to plaintiff's attorney. Defendant shall send every fourth compensation check to plaintiff's counsel of the continuing amount.
4. Defendant shall pay the costs, including an expert witness fee of $390.00 to Dr. Gary Kuzma.
This the 14th day of January 2005.
 S/_______________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
DCS/mb